WILLIAMS, Circuit Judge,
concurring.
I am not sure whether the Supreme Court would find Alleyne to be retroactively applicable on collateral review. But *626 because we as appellate courts decide the retroactivity question in the first instance, absent direction from the Supreme Court, Ashley v. United States, 266 F.3d 671, 673 (7th Cir.2001), I would like to weigh in on both the arguments for retroactivity and the Supreme Court’s jurisprudence on the topic. I also take issue with the majority’s reliance on the non-retroactivity of an earlier case. That is not dispositive.
The majority states that if “Nicole Hedges died from using Crayton’s product,” that finding would increase the minimum sentence but would “not constitute a new offense.” Op. 623.[1] Under Alleyne, that is simply not true. Alleyne made clear that “[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense.” 133 S.Ct. at 2162 (emphasis added). “Distribution of heroin” is not the same offense as “distribution of heroin that results in death.” We know that they are not the same offense but instead constitute two different offenses because the statutes provide for different statutory ranges of punishment. See 21 U.S.C. § 841(b)(1)(C).
This misconception has permeated circuit court decisions addressing whether Apprendi and Alleyne should apply retroactively, leading many courts to downplay the significance of these decisions. See, e.g., Sepulveda v. United States, 330 F.3d 55, 60 (1st Cir.2003) (“Nothing in the Apprendi decision indicates to us that infringements of its rule will seriously diminish the accuracy of convictions (which, by definition, must take place before any such infringement occurs).”); United States v. Sanchez-Cervantes, 282 F.3d 664, 671 (9th Cir.2002) (“The application of Apprendi only affects the enhancement of a defendant’s sentence once he or she has already been convicted beyond a reasonable doubt.”); Goode v. United States, 305 F.3d 378, 385 (6th Cir.2002) (“The accuracy that is improved by the Apprendi requirement is in the better imposition of a proper sentence. In contrast, the accuracy that is improved by the rule of Gideon involves the basic determination of the defendant’s guilt or innocence.”). I cannot subscribe to this view. First, Apprendi and Alleyne are not about sentencing. They are about the accurate determination of a defendant’s guilt of a particular offense. If Apprendi was not clear on this point, Alleyne clarified it. 133 S.Ct. at 2160 (stating that “because the legally prescribed range is the penalty affixed to [a] crime,” a fact that increases either end of the penalty range “produces a new penalty and constitutes an ingredient of the offense”). Second, that we, along with other circuits, found Apprendi to not be retroactive is not dispositive of the question of whether Alleyne is retroactive. One reason we know that is because the Supreme Court has told us that Gideon v. Wainwright would be retroactive, Saffle v. Parks, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), without indicating that any of Gideon’s antecedents — like Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) or Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) — would be retroactive.
I begin with a discussion of the Supreme Court’s retroactivity jurisprudence, which the majority does not address. The only part of the majority’s opinion that appears to reference any court’s standard for retroactivity is a citation to our own decision in Curtis v. United States, 294 F.3d 841 (7th Cir.2002). Op. 624-25. The standard from the Supreme Court is that procedural rules must be “implicit in the concept of *627 ordered liberty” (among other things) in order to be retroactively applicable. Teague v. Lane, 489 U.S. 288, 307, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). However, Curtis framed the question as whether the rules are “so fundamental that any system of ordered liberty is obliged to include them.” 294 F.3d at 843 (emphasis added). The majority repeats this language from Curtis. The difference in phrasing may seem small, but the Supreme Court has indicated that a rule need not be utilized by every criminal justice system in order to be implicit in the concept of ordered liberty in the United States. See Gideon v. Wainurright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (“The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours.”).
Under Teague, a new rule can be retroactive to cases on collateral review only if it falls into one of two narrow exceptions to the general rule of nonretroactivity. 489 U.S. at 311-13, 109 S.Ct. 1060. Of relevance here is the second Teague exception for new rules of criminal procedure. New rules of procedure generally do not apply retroactively to cases that became final before the new rule was announced, unless the new rule is “a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.” Whorton v. Bockting, 549 U.S. 406, 416, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007). To qualify as watershed, a new rule must meet two requirements. “Infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction and the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.” Tyler v. Cain, 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). In my view, Alleyne meets these requirements.
Alleyne applied a fundamental principle that dates back at least to our nation’s founding. It has long been established that the Constitution “protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This right to be convicted beyond a reasonable doubt is a “historically grounded right[ ] of our system, developed to safeguard men from dubious and unjust convictions.” Brinegar v. United States, 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). That the government must prove beyond a reasonable doubt every element of an offense is “an ancient and honored aspect of our criminal justice system.” Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).
The reasonable-doubt standard “plays a vital role in the American scheme of criminal procedure.” Cage v. Louisiana, 498 U.S. 39, 39-40, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (quoting Winship, 397 U.S. at 363, 90 S.Ct. 1068). “Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error.” Cage, 498 U.S. at 40, 111 S.Ct. 328. The reasonable-doubt standard implicates the fundamental fairness and accuracy of criminal proceedings because “a person accused of a crime would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.” Winship, 397 U.S. at 363, 90 S.Ct. 1068. “[U]se of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves *628 people in doubt whether innocent men are being condemned.” Id. at 364, 90 S.Ct. 1068. In fact, the Supreme Court has said that the reasonable-doubt requirement is a basic protection “without which a criminal trial cannot reliably serve its function.” Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
The requirement that every element of a crime — defined as every fact that changes the statutory penalty range, Alleyne, 133 S.Ct. at 2158 — be proven beyond a reasonable doubt improves the accuracy of the fact-finding process, because it reduces the risk that a person guilty of one crime might be convicted of a more serious, and separate, crime of which he is innocent. In fact, the reasonable-doubt standard is the “prime instrument” for reducing such risk. Cage, 498 U.S. at 40, 111 S.Ct. 328. In my view, the “beyond a reasonable doubt” standard for a criminal conviction goes to the heart of fundamental fairness and accuracy and lowering the standard for a criminal conviction to “preponderance of the evidence” increases the risk of an inaccurate conviction. Factfinding based upon preponderance of the evidence, rather than the reasonable-doubt standard, seriously diminishes accuracy such that there is an impermissibly large risk of an inaccurate conviction.
As to the second requirement for a watershed rule, Alleyne altered our understanding of the bedrock procedural elements essential to the fairness of a proceeding by establishing a new class of facts that constitute the “crime” and thus must be found by the jury beyond a reasonable doubt. We have long known that' elements of the crime must be proven beyond a reasonable doubt. But there has been much debate about how to define “elements” versus “sentencing factors.” Alleyne changed our understanding of what constitutes an “element” of a crime. “Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt.” Jones v. United States, 526 U.S. 227, 232, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).
Allowing Crayton to be convicted of “distribution of heroin that resulted in death” by a mere preponderance of the evidence increased the risk of his conviction resting on a factual error. The reasonable-doubt standard “provides concrete substance for the presumption of innocence-that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law.” Winship, 397 U.S. at 363, 90 S.Ct. 1068. Failing to apply Alleyne (and Apprendi) retroactively creates the “troubling possibility that a defendant has been convicted of conduct that constitutes a less serious offense than the one for which he is sentenced.” Coleman v. United States, 329 F.3d 77, 93 (2d Cir.2003) (Parker, Jr., J., concurring in the judgment). Many judges seem untroubled by this possibility. I am not one of them. I do not think the fact that a person is guilty of one crime means that he has a lesser interest in, or right to, a determination of his guilt of a different offense beyond a reasonable doubt.
Two Supreme Court decisions suggest that new rules which implicate the reasonable-doubt standard like Alleyne should be applied retroactively. In In re Winship, the Supreme Court stated “[l]est there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to con *629 stitute the crime with which he is charged.” 397 U.S. at 364, 90 S.Ct. 1068. In Ivan V v. City of New York, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972), a pre-Teague case, the Court unanimously made In re Winship retroactively applicable on collateral review. In Hankerson v. North Carolina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), another preTeague case, the Court (again unanimously) found that Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) — which established the rule that the state must establish all elements of a criminal offense beyond reasonable doubt and invalidated presumptions that shift the burden of proving elements to the defendant — was retroactively applicable.
The majority writes that neither Apprendi nor Alleyne concluded that findings based on the preponderance standard are too unreliable in general to be the basis of a valid sentence. I do not quarrel with that statement. My quarrel is with the characterization of Alleyne as a decision about sentencing, rather than guilt. “Each crime has different elements and a defendant can be convicted only if the jury has found each element of the crime of conviction.” Alleyne, 133 S.Ct. at 2162. The fundamental question here is guilty or not guilty of what? Crayton was found guilty of “distribution of heroin” beyond a reasonable doubt. But he was not found guilty of “distribution of heroin that resulted in death” beyond a reasonable doubt. These are two different offenses. As the Supreme Court said in Alleyne, “the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury” and proven beyond a reasonable doubt. Id. at 2161. Facts that increase a mandatory statutory minimum are “part of the substantive offense.” Id. “When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense.” Id. at 2162. The accuracy improved by Alleyne is not just in the proper sentence. It is in the determination of guilt .or innocence with respect to the offense of distribution of heroin that resulted in death.
While the majority mentions Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), the holding of that case is of little assistance in deciding the question here since Schriro was about jury versus judicial fact finding where critically, the standard of proof of beyond a reasonable doubt remained unchanged. Furthermore, even if Alleyne was about sentencing, Schriro “leaves little doubt that the ‘watershed rule’ can apply to a procedural rule that only affects sentencing.” Lloyd v. United States, 407 F.3d 608, 614 (3d Cir.2005). We must look at whether fact-finding based upon a preponderance of the evidence “so seriously diminishes accuracy that there is an impermissibly large risk of punishing conduct the law does not reach.” Schriro, 542 U.S. at 355-56,124 S.Ct. 2519. That it does. Because the reasonable-doubt standard is the prime instrument to ensure accuracy of convictions, allowing a factfinder to make determinations based upon a preponderance of the evidence, rather than beyond a reasonable doubt, does seriously diminish accuracy.
The majority also writes that post-Aileyne, “the judge still would have been entitled to sentence Crayton to 20 years in prison for distributing heroin after finding by a preponderance of the evidence that his product did kill Hedges,” citing generally United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). Op. 625. However, being entitled to do something and being required to do something are two very different things. And the argument is a red herring because the *630 judge was entitled to sentence Crayton to 20 years with or without a finding that his product resulted in death. After all, the statutory range for “distribution of heroin” was 0 to 20 years. She clearly did not want to sentence Crayton so high, but she was bound to, based upon a finding by- a preponderance of the evidence that death resulted. Ironically, the judge could not have sentenced Crayton to 241 months (20 years .and 1 month), because that sentence would have violated Apprendi. The preponderance of the evidence finding required her to sentence Crayton to exactly 20 years.
The majority further writes that “[tjhat principle” (which I assume is a reference to the holding of Alleyne) “is some distance from a rule that defendants are entitled to have all important facts resolved by the jury under the reasonable-doubt standard.” Op. 625. I am not sure what it means by the concept of “important facts.” But the rule of Alleyne is that defendants are entitled to have all facts that increase a statutory minimum or maximum resolved by a jury under the reasonable doubt standard. So if by “important facts” it means “facts that increase a statutory minimum or maximum,” it is wrong.
Having considered the importance of the “beyond a reasonable doubt” standard and the ways in which Alleyne altered our understanding of this bedrock procedural element, I now address what is pragmatically the real problem: the fact that the Supreme Court has never found a new rule of criminal procedure to fall within the second Teague exception. It has come close though. On more than one occasion, the Court has been one justice shy of finding new rules of criminal procedure to be retroactively applicable. See, e.g., Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); O’Dell v. Netherlands 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997); Sawyer v. Smith, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990); see also Tyler v. Cain, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (one justice shy of finding that the Court had already made Cage retroactive in Sullivan).
What the Court said is that Gideon would be such a rule, Saffle, 494 U.S. at 495, 110 S.Ct. 1257, and so I turn to Gideon for guidance. See Gray v. Netherland, 518 U.S. 152, 170, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (referring to the Gideon rule as a “paradigmatic example” of the second Teague exception).
With the passage of time, I hope we do not lose sight of the context in which Gideon was decided. Gideon was remarkable. But its holding did not come out of nowhere. Some courts have described Gideon as cutting “a new rule from whole cloth,” see Butterworth v. United States, 775 F.3d 459, 468 (1st Cir.2015), unlike Apprendi and Alleyne, but I disagree. A series of other decisions regarding the right to counsel, due process, and incorporation of the Bill of Rights to the states led to it — decisions which the Supreme Court has not suggested would have met the standard for the watershed rule exception under Teague. Prior to Gideon, the Supreme Court had determined that the Sixth Amendment required counsel to be provided to indigent federal defendants. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). It had also found that the Due Process Clause required states to provide counsel to indigent defendants in special circumstances, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), which eventually came to include all capital cases, Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), but. also encompassed non-capital cases where the totality of facts showed circumstances requiring ap *631 pointment of counsel like the personal characteristics or complexity of the charge made a fair trial unlikely without appointed counsel, e.g., Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).[2] The Court had established that it violated due process for a state to deny a defendant the opportunity to obtain (and the right to be represented by) counsel of one’s own choosing. Chandler v. Fretag, 348 U.S. 3, 9, 75 S.Ct. 1, 99 L.Ed. 4 (1954). And it had made other Bill of Rights guarantees obligatory on the states through the Fourteenth Amendment, including the Fourth Amendment’s prohibition on unreasonable searches and seizures and the Eighth Amendment’s ban on cruel and unusual punishment. Gideon, 372 U.S. at 342, 83 S.Ct. 792.
Given these precedent cases, it is no wonder that Justice Clark in his concurrence in Gideon noted that that case “d[id] no more than erase a distinction which ha[d] no basis in logic and an increasingly eroded basis in authority.” Gideon, 372 U.S. at 348, 83 S.Ct. 792 (Clark, J., concurring in the result). That sounds familiar. See Alleyne, 133 S.Ct. at 2160 (citing Justice Breyer’s concurrence in Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), which reasoned that facts increasing the minimum and facts increasing the maximum cannot be distinguished “ ‘in terms of logic’ ”).
Some circuits have found that “Gideon altered our understanding of what constitutes basic due process by establishing that representation by counsel is fundamental to a fair trial,” while Apprendi and Alleyne “merely clarified and extended the scope of a pre-existing right — the right to have all convictions supported by proof beyond a reasonable doubt.” United States v. Mora, 293 F.3d 1213, 1219 (10th Cir.2002). I cannot help but sense some revisionist history. Prior to Gideon, Powell had already stated that the right to counsel was fundamental. 287 U.S. at 68, 53 S.Ct. 55. Gideon merely clarified and extended the scope of a pre-existing right because the right to counsel previously existed in federal prosecutions, special circumstances, and state inmates prosecuted for capital offenses.
The Supreme Court and circuit courts alike have found that new procedural rules, despite arguably being aimed at improving the accuracy of trial or promoting the objectives of fairness and accuracy, do not meet the Teague standard because they are not as “sweeping” as Gideon. See e.g., O’Dell, 521 U.S. at 167, 117 S.Ct. 1969; United States v. Mandanici, 205 F.3d 519, 528-29 (2d Cir.2000). It seems to me that the “sweeping” nature of Gideon is not so much a reflection of how many cases it would have applied to retroactively, but instead a statement about how many cases in which it would be a relevant consideration going forward. The Supreme Court said that Gideon was sweeping because it “established an affirmative right to counsel in all felony cases.” O’Dell, 521 U.S. at 167, 117 S.Ct. 1969. But the right to counsel had already been established for all federal defendants and for state defendants under certain circumstances. Also, because of Johnson and the fact that most states provided counsel to *632 indigent defendants as a matter of state law prior to Gideon, relatively few defendants actually needed to be retried as a result of Gideon’s holding. Most indigent defendants were already being provided with counsel prior to Gideon.[3] But going forward, an assertion of the federal constitutional right to counsel became a factor in every criminal case. Similarly, many rules have been found to be not as “sweeping” as Gideon because they simply are not a factor in a significant number of cases. For example, the rule from Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) is only a consideration where the government seeks to admit testimonial hearsay. Whorton, 549 U.S. at 419, 127 S.Ct. 1173; see also O’Dell, 521 U.S. at 167, 117 S.Ct. 1969 (right of rebuttal afforded to defendants in a “limited class of capital cases” was not as “sweeping” as Gideon). That just does not come up in every criminal case. But how to define the crime (the issue in Alleyne) does. It is just as sweeping as Gideon.
In many ways, Alleyne is similar to Gideon in that it is the culminating case in a long-running debate regarding a fundamental right. Gideon settled the debate of when our Constitution requires that the government provide counsel to indigent defendants. Alleyne settled the debate of how a “crime” is defined. Each crime is composed of different elements and a fact is an element of a crime when it alters the legally prescribed punishment. 133 S.Ct. at 2162. It cannot be a sufficient justification that Alleyne is not retroactive because it has close analytic ties to Apprendi (which is not retroactive), because Gideon meets the Teague standard, but the Supreme Court has not suggested that Johnson or Powell, to which Gideon has close analytic ties, would also meet the Teague standard. Apprendi does not need to be retroactive in order for Alleyne to be retroactive.
Obviously, applying Alleyne retroactively would mean that the holding of Apprendi would be applied retroactively as well. But the same is true of Gideon and its predecessors. Applying Gideon retroactively necessarily entails that the holdings of Johnson and Powell are applied retroactively. A rule that counsel must be provided to all indigent defendants in felony prosecutions subsumes the rule that counsel must be provided to indigent state defendants in special circumstances.
Here, the district judge was permitted to convict Crayton of “distribution of heroin that resulted in death” in the in-between range of equal to or greater than a preponderance of the evidence, but less than beyond a reasonable doubt. While the district court did not state that she would not have found death resulting beyond a reasonable doubt, the government said at oral argument that if the judge had said on the record that she found that death resulted by a preponderance and also explicitly said she did not find it beyond a reasonable doubt, the government’s position would be the same. Many cases have tried and failed to have new procedural rules declared retroactive by the Supreme Court. But in my opinion, none of *633 these rules were as essential to ordered liberty as the rule that criminal defendants must be convicted beyond a reasonable doubt.
All that said, I recognize that the Supreme Court has never found a new rule of criminal procedure to meet the Teague standard, so I concur in the judgment here. However I hope that the Supreme Court will find in its retroactivity jurisprudence space on the Gideon pedestal for other new rules, particularly those so important to our criminal justice system as the reasonable-doubt standard.

. Perhaps this statement is a reference to the pre-Alleyne understanding of conviction yersus sentencing, but later portions of the opinion, see op. 624-25, suggest otherwise.

. This particular rule — that states must provide counsel to indigent non-capital defendants under special circumstances — produced a long series of Supreme Court decisions, most of which found that the defendant was entitled to appointed representation under the circumstances. See Moore v. Michigan, 355 U.S. 155, 159 n. 7, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957) (citing twenty-six Supreme Court cases discussing the principles which determine the extent to which the constitutional right to counsel is secured in a state prosecution).

. Even prior to Johnson, in 1930, the Supreme Court noted that "[t]hanks to the humane policy of the modern criminal law”, a criminal defendant "may have counsel furnished him by the state.” Patton v. United States, 281 U.S. 276, 308, 50 S.Ct. 253, 74 L.Ed. 854 (1930). In 1955, at least thirty-four states provided counsel to indigent defendants in all felony prosecutions. William M. Beaney, The Right to Counsel in American Courts 84-85 (1955). In fact, "by the time Gideon was decided, only five states had a definite policy against appointing counsel in noncapital cases.” William M. Beaney, The Right to ' Counsel: Past, Present, and Future, 49 Va. L.Rev. 1150, 1156 (1963).