JILL PRYOR, Circuit Judge,
dissenting:
I dissent because I believe that in Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), the. Supreme Court announced a new substantive rule of constitutional law that the Court has made retroactive to cases on collateral review. In no uncertain terms, the Supreme Court has said that “decisions that narrow the scope of a criminal statute by interpreting its terms.... apply retroactively....” Schriro v. Summerlin, 542 U.S. 348, 351-51, 124 S.Ct. 2519, 159 L.Ed.2d 442. The majority concedes that *993 Johnson is that very type of narrowing decision. So does the government, which does not contest Johnson’s retroactivity.[1]
I do not disagree with the foundation upon which the majority opinion builds its analysis. To be permitted to file a second or successive motion to vacate, set aside, or correct his sentence, Gilberto Rivero must make a prima facie showing that his application to file the motion relies upon “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” 28 U.S.C. § 2255(h)(2). In concluding that the residual clause of the Armed Career Criminal Act (“ACCA”) was impermissibly vague under the Due Process Clause, Johnson announced a new rule of constitutional law.[2] Maj. Op. at 988; see Johnson, 135 S.Ct. at 2563 (“We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution’s guarantee of due process.”); see also Chaidez v. United States, — U.S. -, 133 S.Ct. 1103, 1107, 185 L.Ed.2d 149 (2013) (“[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s conviction became final.” (internal quotation marks omitted)). And there is no doubt that the rule announced in Johnson previously was unavailable to Mr. Rivero: he was convicted and sentenced in 2004, and we affirmed his sentence on direct appeal in 2005. See United States v. Rivero, 141 Fed.Appx. 800 (2005) (unpublished).
The question, then, is whether Johnson’s new rule of constitutional law applies retroactively to cases like Mr. Rivero’s on collateral review. For second or successive petitions, a new rule is retroactive only if the Supreme Court itself has made it so. Tyler v. Cain, 533 U.S. 656, 662, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (citing 28 U.S.C. § 2244(b)(2)(A)). “‘[M]ade’ means ‘held’ and, thus, the requirement is satisfied only if [the Supreme] Court has held that the new rule is retroactively applicable to cases on collateral review.” Id. As Justice O’Connor explained in her concurring opinion in Tyler, a new rule of constitutional law can be made retroactive “not only through an express pronouncement of retroactivity, but also ‘through *994 multiple holdings that logically dictate the retroactivity of the new rule.’ ” In re Holladay, 331 F.3d 1169, 1172 (11th Cir.2003) (quoting Tyler, 533 U.S. at 668, 121 S.Ct. 2478 (O’Connor, J., concurring)). Because the Court in Johnson (a direct review case) did not expressly pronounce the new rule to be retroactive on collateral review, I agree with the majority that the new rule is retroactive only if holdings of the Supreme Court logically dictate its retroac-tivity. See Maj. Op. at 989.
The Supreme Court has, on two occasions important to this case, examined ret-roactivity of new rules of law. In Teague v. Lane, the Court decided that “new constitutional rules of criminal procedure will not be applicable” to cases on collateral review. 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). But the Court established exceptions to this general principle of non-retroactivity, including, as relevant here, new rules that “place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.” Id. at 307.[3] As the majority points out, under the Teague exception, rules that prohibit the criminalization of certain primary conduct, as well as rules that prohibit a category of punishment for certain persons or conduct — rules that are essentially substantive in nature — are retroactive. See Maj. Op. at 990.
Nine years later in Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), the Supreme Court refused an invitation to apply Teague’s general rule of non-retroactivity. Kenneth Bousley was convicted in 1990 of “using” a firearm in violation of 18 U.S.C. § 924(c)(1). Id. at 616, 118 S.Ct. 1604. After the Eighth Circuit Court of Appeals affirmed his conviction, Mr. Bousley sought collateral relief. Id. at 617, 118 S.Ct. 1604. While Mr. Bousley’s appeal from the district court’s denial of habeas relief was pending, the Supreme Court held in Bailey v. United States that § 924(c)(1)’s “use” prong required the government to establish “active employment of the firearm.” 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Because Mr. Bousley asserted that he merely possessed the firearm, he argued based on Bailey that his conduct was not a crime under § 924(c)(1) and that his guilty plea to that charge was therefore involuntary. Bousley, 523 U.S. at 617-18, 118 S.Ct. 1604. The Eighth Circuit concluded that Mr. Bousley was not entitled to collaterally attack his guilty plea based on Bailey, and, when the government declined to argue in support of the Eighth Circuit’s decision, the Supreme Court appointed amicus. Id. at 617-18, 118 S.Ct. 1604.
Amicus urged the Supreme Court to apply a Teague bar to Mr. Bousley’s claim, but the Supreme Court declined to do so because “decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct ‘beyond the power of the criminal law-making authority to proscribe,’ [Teague, 489 U.S. at 311, 109 S.Ct. 1060,] necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal.” Id. at 619-21, 109 S.Ct. 1060 (other internal quotation marks omitted). “Accordingly, it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our deci *995 sion in Bailey in support of his claim that his guilty plea was constitutionally invalid.” Id. at 621, 116 S.Ct. 501 (emphasis added). Put differently, Bailey necessarily was available to Mr. Bousley on collateral review. Id.; see United States v. Peter, 310 F.3d 709, 711 (11th Cir.2002) (“Decisions of the Supreme Court construing substantive federal criminal statutes must be given retroactive effect.” (citing Bousley, 523 U.S. at 620-21, 118 S.Ct. 1604)).
In Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), the Supreme Court provided a blueprint for the application of the types of retroactively applicable rules the Court constructed in Teague and Bousley. There, the Court clearly stated that new substantive rules of constitutional law apply retroactively, explaining:
This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see Bousley v. United States, 523 U.S. 614, 620-21 [118 S.Ct. 1604, 140 L.Ed.2d 828] (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State’s power to punish, see ... Teague v. Lane, 489 U.S. 288, 311 [109 S.Ct. 1060, 103 L.Ed.2d 334] (1989) (plurality opinion). Such rules apply retroactively because they “necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal” or faces a punishment that the law cannot impose upon him. Bousley, supra, at 620, 118 S.Ct. 1604
Id. at 351-52, 124 S.Ct. 2519 (internal quotation marks and footnotes omitted). Sum-merlin makes plain that the rules announced in Bousley and in Teague are related but distinct, and that either type of rule is retroactively applicable.
The majority and I agree that “ ‘[t]he new rule announced in [Johnson ] is substantive rather than procedural because it narrow[ed] the scope of [section] 924(e) by interpreting its terms, specifically, the term violent felony.’ ” Maj. Op. at 988 (quoting Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253, 1278 (11th Cir.2013) (citing Summerlin, 542 U.S. at 351-52, 124 S.Ct. 2519)). “Johnson ‘narrowed the class of people who are eligible for’ an increased sentence under the Armed Career Criminal Act.” Id. at 988-89 (quoting Bryant, 738 F.3d at 1278 (emphasis omitted)). That is, the majority agrees that the rule announced in Johnson fits squarely into the Bousley category of retroactive rules described by Summerlin. Our inquiry should end there. Rules that “narrow the scope of a criminal statute by interpreting its terms,” which are substantive in nature, apply retroactively, and Johnson announced such a rule. Sum-merlin, 542 U.S. at 351-52, 124 S.Ct. 2519. Thus, the rule announced in Johnson necessarily applies retroactively, and Mr. Rivero’s application should be granted.[4]
Yet, despite its express acknowledgement that Johnson is precisely the type of decision that the Supreme Court has said “generally applies] retroactively,” Sum-merlin, 542 U.S. at 351, 124 S.Ct. 2519, the majority nevertheless concludes that the Supreme Court has not made Johnson retroactive. I cannot agree.
The majority says that the retroactive application of new substantive constitutional rules on collateral review is “limit[ed] ... to those rules that ‘necessarily carry a significant risk that a defendant stands convicted of an act that the law does not *996 make criminal or faces a punishment that the law cannot impose upon him.’ ” Maj. Op. at 988 (quoting Summerlin, 542 U.S. at 352, 124 S.Ct. 2519 (internal quotation marks and citation omitted)). But Sum-merlin did not describe a limitation; instead, it explained that decisions that narrow the scope of a criminal statute by interpreting its terms apply retroactively “because they necessarily carry” such a risk. 542 U.S. at 352, 124 S.Ct. 2519 (emphasis added) (internal quotation marks omitted). In other words, the Court in Summerlin imposed no additional requirement for retroactivity with this language— it simply illustrated the reason why certain rules, including rules narrowing a criminal law’s scope, must be retroactively applicable. See Peter, 310 F.3d at 711.
Why does this distinction matter? Because the majority employs a description it incorrectly characterizes as a “limit[ation]” to eliminate one of the two categories of rules the Supreme Court described with that language. See Maj. Op. at 988 (citing Teague, 489 U.S. at 311,109 S.Ct. 1060, for the proposition that “a new substantive rule applies retroactively if it ‘places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe’ ”). By eliminating that category, the majority altogether sidesteps Bousley (which according to Summerlin described a necessarily retroactive type of rule related to but distinct from Teague’s exception).[5] In concluding that “[n]o combination of holdings of the Supreme Court ‘necessarily dictate[s]’ that Johnson should be applied retroactively on collateral review,” Maj. Op. at 5 (quoting In re Anderson, 396 F.3d 1336, 1339 (11th Cir.2005)), the majority writes:
[T]he rule announced in Johnson does not meet the criteria the Supreme Court uses to determine whether the retroac-tivity exception for new substantive rules applies. Johnson held that the residual clause of the- Armed Career Criminal Act does not impose a punishment for a prior conviction for possession of a short-barreled shotgun because that clause is unconstitutionally vague, 135 S.Ct. at 2558, but Johnson did not hold that Congress could not impose a punishment for that same prior conviction in a statute with less vague language. Indeed, the day after the Supreme Court decided Johnson, Congress could have amended the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), to provide a greater sentence for a defendant with a prior conviction for possession of a short-barreled shotgun or, as here, a prior conviction for attempted burglary. Nothing in Johnson suggests that “certain kinds of primary, private individual conduct [are] beyond the power of [Congress] to proscribe,” Teague, 489 U.S. at 311, 109 S.Ct. at 1075 (plurality opinion) (internal quotation marks and citation omitted).
Maj. Op. at 989.
Here the majority again focuses only on Teague’s retroactivity exception, overlook *997 ing Summerlin’s instruction that two different types of substantive decisions apply retroactively: “[1] decisions that narrow the scope of a criminal statute [as in Bous-ley ], as well as [2] constitutional determinations that place particular conduct or persons covered by the statute beyond the State’s power to punish [as in Teague].”’ Summerlin, 542 U.S. at 351-52, 124 S.Ct. 2519 (emphasis added).[6] A rule narrowing the scope of a criminal statute by interpreting its terms is one type. Summerlin, 542 U.S. at 351-52, 124 S.Ct. 2519 (citing Bousley). The Teague exception, a rule that places conduct or persons covered by a statute beyond the State’s power to punish, is a second type. Id. (citing Teague).
I do not doubt that new substantive rules may sometimes both narrow the scope of a criminal statute and place certain conduct outside the State’s authority to punish. I think the rule announced in Johnson is such a case, although the majority disagrees. But Summerlin could not be clearer that a rule is retroactive if it falls into one of the two related categories the Supreme Court described. So requiring a new rule to check the boxes of both types of substantive, retroactive deci-' sions — when the two types are listed dis-junctively — is directly contrary to Sum-merlin.
The result I would reach in this case fits neatly within Justice O’Connor’s example in Tyler. “[I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of a particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review.” Tyler, 533 U.S. at 668-69, 121 S.Ct. 2478 (O’Connor, J., concurring) (emphasis added). “In such circumstances, we can be said to have ‘made’ the given rule retroactive to cases on collateral review.” Id. at 669, 121 S.Ct. 2478. In Case One, Bousley, the Supreme Court held that rules, made in “situations in which this Court decides the meaning of a criminal statute enacted by Congress” by. “holding that a substantive federal criminal statute does not reach certain conduct” raise no Teague retroactivity bar. Bous-ley, 523 U.S. at 620, 118 S.Ct. 1604. The Supreme Court reiterated that holding in Summerlin, describing the type of Bous-ley decisions that “apply retroactively” to include “decisions that narrow the scope of a criminal statute by interpreting its terms ... because [those decisions] ‘necessarily carry a significant risk that a defendant’ ... faces a punishment that the law cannot impose upon him.” Summerlin, 542 U.S. at 351-52, 124 S.Ct. 2519 (quoting Bousley, 523 U.S. at 620,118 S.Ct. 1604).
Case Two, of course, is Johnson, in which the Supreme Court held that “[i]n-creasing a defendant’s sentence under the [residual] clause [of the ACCA] denies due ■ process of law.” 135 S.Ct. at 2557. In so holding, the Supreme Court “narrow[ed] the scope of a criminal statute by interpreting its terms.” Summerlin, 542 U.S. *998 at 351, 124 S.Ct. 2519 (citing Bousley, 523 U.S. at 620-21, 118 S.Ct. 1604); see Maj. Op. at 988. Because the action the Supreme Court took in Johnson is “coextensive with” Bousley’s category of substantive, retroactive rules, the two cases, taken together, “logically dictate” the conclusion that Johnson is retroactive. Tyler, 533 U.S. at 666-67,121 S.Ct. 2478.
Moreover, Johnson’s void-for-vagueness decision is precisely the kind of rule that “ ‘necessarily carries] a significant risk that a defendant’ ... faces a punishment that the law cannot impose upon him.” Summerlin, 542 U.S. at 352, 124 S.Ct. 2519 (quoting Bousley, 523 U.S. at 620, 118 S.Ct. 1604). Johnson found the ACCA’s residual clause to be unconstitutionally vague because if a prior offense potentially falls within the residual clause (as a crime that “otherwise involves conduct that presents a serious potential risk of physical injury to another,” 18 U.S.C. § 924(e)(2)(B)(ii)), then courts must “picture the kind of conduct that the crime involves in the ordinary case” and then “judge whether that abstraction presents a serious potential risk of physical injury.” 135 S.Ct. at 2556-57 (internal quotation marks omitted). By judging the crime not by what the defendant did but by what the crime ordinarily entails, and then judging whether that hypothetical conduct presents a serious potential risk of injury to another, there is a “significant risk” that what the defendant actually did is not what the residual clause purported to punish — that is, that the defendant “faces a punishment that the law cannot impose upon him.” Summerlin, 542 U.S. at 352, 124 S.Ct. 2519 (citing Bousley ).[7]
This illustrates not only that Bousley and Johnson, taken together, “logically dictate the retroactivity of the new rule,” Tyler, 533 U.S. at 668, 121 S.Ct. 2478 (O’Connor, J., concurring), but also that *999 Johnson “prohibits a category of punishment for certain offenders or offenses,” as the majority describes Teague. Maj. Op. at 990. As I said, Bousley and Teague involve related concepts, and in this case the rule announced in Johnson also prohibits courts from imposing a 15-year mandatory minimum sentence under the ACCA’s residual clause for non-enumerated offenses. Thus, I also believe that Teague and Johnson, taken together, necessarily dictate the Johnson rule’s retroac-tivity. And I am not alone in this conclusion. Based on Teague as described in Summerlin, the Seventh Circuit concluded that the Supreme Court has made Johnson retroactively applicable to second or successive petitions. See Price v. United States, No. 15-2427, 795 F.3d 731, 2015 WL 4621024, at *3 (7th Cir. Aug. 4, 2015) (concluding, borrowing from the language of Teague, that in declaring the ACCA’s residual clause unconstitutionally vague, “the Supreme Court prohibited a certain category of punishment for a class of defendants because of their status” (internal quotation marks omitted)). Indeed, before the Seventh Circuit decided Price, it asked the United States to opine whether a successive collateral attack based on Johnson should be permitted, and the government conceded that it should. Id. at *1; see United States Response to Application, Price v. United States, No. 15-2427, at 11-12 (July 14, 2015) (“Response to Application”).[8]
The majority opinion says Johnson nonetheless does not apply retroactively because Congress could amend the ACCA and reimpose heightened punishments for the very crimes of which Mr. Rivero was convicted. Reliance upon what Congress could do to salvage what the Supreme Court has declared unconstitutional is without legal foundation and, what’s more, overlooks Congress’s actions before, during, and after Bousley was decided.
Bousley, which permitted a petitioner to collaterally attack his guilty plea based on the Supreme Court’s decision limiting the scope of § 924(c)(1) to “active employment of the firearm,” was decided in May 1998. 523 U.S. at 616, 118 S.Ct. 1604 (citing Bailey, 516 U.S. at 144, 116 S.Ct. 501). In November 1998, Congress amended § 924(c)(1) to criminalize “possess[ion of] a firearm” “in furtherance of’ a crime of violence or drug trafficking crime, which encompassed the conduct for which Mr. Bousley originally was convicted. 112 Stat. 3469 (1998).
The possibility of this subsequent amendment had no bearing whatsoever on the Supreme Court’s decision about Mr. Bous ley’s reliance on Bailey on collateral review. And why would it? Bailey narrowed the scope of the statute under which Mr. Bousley was convicted. That satisfied the Supreme Court that the rule must apply retroactively. Bousley, 523 U.S. at 621, 118 S.Ct. 1604 (“Accordingly, it would be inconsistent with the doctrinal under *1000 pinnings of habeas review to preclude the petitioner from relying on our decision in Bailey in support of his claim that his guilty plea was constitutionally invalid.”); see also Summerlin, 542 U.S. at 351-52, 124 S.Ct. 2519. The Supreme Court was unconcerned with the hypothetical prospect that Congress could amend § 924(c)(1) to criminalize Mr. Bousley’s conduct.[9] Of course it was possible. Not ■only was it possible, but a bill known as the “Bailey Fix Act” was already under debate in Congress when the Supreme Court decided Bousley. See 143 Cong. Rec. S633-06 (Jan. 22, 1997) (introduction of Senate bill 191 by Senator Helms); H. Rep. 105-845 at 86-87 (noting that the Senate passed S. bill 191 on November 6, 1997, and that the House of Representatives passed its companion bill, H.R. 424, on February 24, 1998, both before oral argument in Bousley)-, 144 Cong. Rec. S12670-02 (Oct. 16,1998) (Senator DeWine “hail[ing] the passage last night of the Bailey Fix Act, also known as the use or carry bill, after two Congresses”). Nonetheless, the Supreme Court permitted Mr. Bousley to proceed on collateral review under its decision in Bailey without ever mentioning Congress’s efforts or ability to amend the statute. Why? Because that fact was immaterial to the Court’s decision. It is immaterial here, too.
I do not dispute that Congress could pass a constitutional residual clause for the ACCA.[10] But Mr. Rivero wasn’t sentenced under such a regime. Nor was Mr. Johnson. The regime under which both were sentenced was unconstitutional. The question is not whether an alternative regime could be constitutional, but whether both men’s actual sentences, the ones they are actually serving, are unconstitutional. The majority neither cites any authority nor provides any logical explanation why a future Congress’s hypothetical actions could affect retroactivity today. That’s because there is none. And the existence of Bous-ley despite § 924(c)(l)’s ultimate amendment tells us there cannot be.
The majority alternatively contends that the absence of Supreme Court precedent on the viability of void-for-vagueness challenges to the Sentencing Guidelines means that we must deny Mr. Rivero’s application, citing in support the decisions of four circuits concluding that the guidelines are *1001 not subject to such challenges. See Maj. Op. at 991. But there is a circuit split on the issue. See United States v. Rearden, 349 F.3d 608, 614 (9th Cir.2003) (“We allow challenges to the sentencing guidelines on vagueness grounds.”); see also United States v. Jones, 979 F.2d 317, 318-20 (3d Cir.1992) (examining and rejecting the argument that the Sentencing Guidelines’ failure to distinguish between cocaine and cocaine base “is arbitrary and irrational” and thus void for vagueness).[11] Indeed, our Court has addressed on the merits such a void-for-vagueness challenge. See United States v. Sanders, 536 Fed.Appx. 879, 882 (11th Cir.2013) (unpublished) (concluding that the career offender enhancement’s residual clause necessarily was not unconstitutionally vague because this Court previously had held that the ACCA’s residual clause was not void for vagueness (citing United States v. Gandy, 710 F.3d 1234 (11th Cir.2013))); see also United States v. Rutherford, 175 F.3d 899, 906 (11th Cir.1999) (rejecting on the merits a void-for-vagueness challenge to the guidelines definition of “crack” cocaine).
Further, the four circuit decisions the majority cites were decided before United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), or rely on pre-Booker authority. They therefore fail to consider that the mandatory guidelines regime unconstitutionally forced judges to interpret what were, in effect, an entirely new set of criminal laws. See id. at 234, 125 S.Ct. 738 (“Because they are binding on judges, we have consistently held that the Guidelines have the force and effect of laws.”). To the extent that overly vague criminal statutes always , create the risk of arbitrary enforcement, see Johnson, 135 S.Ct. at 2557, overly vague Sentencing Guidelines necessarily offended due process before Booker made the guidelines advisory. See also id. at 237,125 S.Ct. 738 (“[T]he fact that the Guidelines were promulgated by the Sentencing Commission, rather than Congress, lacks constitutional significance.”). Mr. Rivero’s career offender residual clause sentence was imposed before Booker. Thus, because he was sentenced as a career offender under the pre-Booker mandatory guidelines regime, application of the impermissibly vague residual clause to him axiomatically offended due process.
In any event, I do not agree that a Supreme Court ruling on a void-for-vagueness challenge to the guidelines is required for purposes of the Tyler analysis. As' I explained above, the majority and I simply disagree on the proper application of the Tyler test. So, the absence of such a ruling is, in my mind, immaterial.
Finally, I note that the majority’s alternative position on the cognizability of a vagueness challenge to the career offender guideline has no effect on the applicability of Johnson to collateral challenges by persons sentenced under the ACCA’s residual clause. Accordingly, we should not decide the retroactivity of the rule announced in Johnson for those persons to the extent the majority denies Mr. Rivero’s application on its alternative ground.
*1002 I believe Mr. Rivero has made a prima facie showing that his application satisfies § 2255(h) and § 2244(b)(2)(A). We are under too tight a deadline to decide more than that at this stage. Let us not forget that Mr. Rivero and other persons sentenced under the residual clause and its sister clause in the Sentencing Guidelines are serving lengthy sentences. “Invoking so shapeless a provision to condemn someone to prison for 15 years to life [under the ACCA] does not comport with the Constitution’s guarantee of due process.” Johnson, 135 S.Ct. at 2560. When a person serving a term in prison was sent there pursuant to an unconstitutional provision, future Congresses are not in a position to fix it. But we are, and the Supreme Court, through multiple holdings, has told us that we should.
I respectfully dissent.

. Although the United States has not been asked to weigh in here, in another case raising the identical issue, when asked by the Seventh Circuit to respond to the application to file a second or successive motion, the government stated, "the United States submits that the application should be granted.” United States Response to Application, Price v. United States, No. 15-2427, at 1 (July 14, 2015); see id. at 7 ("[F]or this Court to grant Price’s application, it must find that Johnson is a (1) previously unavailable (2) new rule (3) of constitutional law that (4) has been made retroactive by the Supreme Court to cases on collateral review.”).

. I assume that the new rule of constitutional law announced in Johnson applies to the residual clause of the career offender enhancement, section 4B 1.2(a)(2) of the Sentencing Guidelines. See United States v. Oliver, 20 F.3d 415, 418 (11th Cir.1994) ("Precisely the same analytical framework applied by the courts in ascertaining the scope of a ‘crime of violence' [under the career offender guideline] logically obtains with respect to the question of what kind of conduct comprises a 'violent felony' [under the ACCA].”); see also U.S. Sentencing Comm’n, News Release: U.S. Sentencing Commission Seeks Comment on Revisions to Definition of Crime of Violence, at 1 (Aug. 7, 2015) ("[T]he statutory language the [Supreme] Court found unconstitutionally vague [in .Johnson ], often referred to as the 'residual clause,' is identical to language contained in the 'career offender' sentencing guideline.... ”). This assumption is bolstered by the United States Sentencing Commission’s proposed changes to the career offender guideline "eliminatfing] from the guideline definition of 'crime of violence’ the residual clause.” Id. For a discussion of this issue as it relates to the majority’s alternative position, see infra at 994-95.

. Teague also provided an exception to non-retroactivity for rules involving "procedures ... implicit in the concept of ordered liberty,” the so-called "watershed rules of criminal procedure” exception. Teague, 489 U.S. at 307, 311, 109 S.Ct. 1060. We need not concern ourselves with this exception because neither Johnson nor the case before us presents any such rule.

. I should be clear that granting the application would mean only that Mr. Rivero has made a prima facie showing of a claim involving Johnson. Under § 2244, the district court must determine whether Mr. Rivero is entitled to relief.

. I recognize that Bousley was a first-§ 2255 case, but that alone does not answer the question of retroactivity here. Bousley’s holding, and not its procedural posture, does. Namely, Bousley's holding, combined with Johnson's, "logically dictates” that the unconstitutionality of the ACCA's residual clause is retroactive in effect. Tyler, 533 U.S. at 668, 121 S.Ct. 2478 (O’Connor, J., concurring); see Holladay, 331 F.3d at 1172 (applying Justice O’Connor’s test). It would be illogical to require one of the Supreme Court's holdings logically dictating the retroactivity of a rule to be a § 2244 case because the statute itself dictates that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certio-rari.” 28 U.S.C. § 2244(b)(3)(E).

. The phrase "as well as” means "and,” but here it serves only to list types of substantive rules disjunctively, each an independently sufficient condition for recognizing retroactive effect. Cf. Pasquini v. U.S. Immigration & Naturalization Serv., 557 F.2d 536, 538 (5th Cir.1977) (reasoning that the "wording of [a criminal statute] ... [was] so broad as to require the conclusion that violations of foreign as well as domestic marijuana laws [fell] within its ambit,” without concluding that concurrent violations of domestic and foreign laws were required to trigger the statutory provision at issue (emphasis added)). To read Summerlin as the majority does would require "as well as” to modify the verbs in each phrase, but it does not. That is, Summerlin does not say that only “decisions that narrow the scope of a statute ... as well as ... place particular conduct ... beyond the State’s power to punish” are retroactive. 542 U.S. at 351-52, 124 S.Ct. 2519.

. The majority contends that, because Bousley did not involve a new rule of constitutional law, “its holding cannot 'necessarily dictate' ... that we apply the new rule from Johnson retroactively on collateral review.” Maj. Op. at 991. In the majority’s view, both Case One and Case Two must involve new rules of constitutional law. I do not read Tyler to require both holdings to be constitutional in nature. Tyler sets forth "three prerequisites” to obtaining relief in the context of a second or successive motion. 533 U.S. at 662, 121 S.Ct. 2478. "First, the rule on which the claim relies must be a 'new rule' of constitutional law; second, the rule must have been 'made retroactive to cases on collateral review by the Supreme Court’; and third, the claim must have been 'previously unavailable.’ ” Id.
This test from Tyler tells us that whether the rule has been made retroactive is a wholly distinct element from whether the claim relies on a new rule of constitutional law. This much is evident from the fact that in Tyler only the second element was at issue. Id. More importantly, the first element is composed of two parts: "a ‘new rule’ of constitutional law." Id. (emphasis added). The ret-roactivity element is concerned only with the "rule” aspect of the first element, not with its constitutional nature. Consistent with this reading, Justice O'Connor says in her concurrence that multiple holdings may logically dictate a result when the Supreme Court "hold[s] in Case One that a particular type of rule applies retroactively to cases on collateral review and hold[s] in Case Two that a given rule is of that particular type.” Id. at 668-69, 121 S.Ct. 2478 (O’Connor, J., concurring) (emphasis added). She does not say that Case One must hold that "a particular type of constitutional rule” applies retroactively. That would conflate the elements of a successive motion that the Tyler majority made clear were distinct.
For this reason, I do not think Tyler requires that both cases be constitutional to logically dictate retroactivity. It is enough that Bousley deemed "a particular type of rule,” rules narrowing the scope of criminal statutes, to "applfyj retroactively to cases on collateral review” and that Johnson announced a new rule of constitutional law by narrowing the scope of the ACCA’s residual clause. Tyler, 533 U.S. at 668, 121 S.Ct. 2478.

. The majority suggests that in Price the Seventh Circuit disagreed with the government's interpretation and with mine. To the extent there is any discrepancy, it is only a matter of emphasis. The majority is correct that the government relied largely on Bousley in concluding that Johnson likely applied retroactively to second or successive motions. But see Response to Application at 14 ("[R]ules that go beyond regulating only the 'manner' of determining culpability — and instead categorically change the range of outcomes— should be treated as substantive rules.” (citing Teague)). The Seventh Circuit said, "We now conclude, consistently with the government’s position, that Johnson announces a new substantive rule of constitutional law that the Supreme Court has categorically made retroactive to final convictions.” Price, 2015 WL 4621024, at *1. The Seventh Circuit relied upon the same language from Summerlin, quoting Bousley, that I do. Id. at *2. The Court also observed that its conclusion was consistent with Teague. Id.

. Should Congress amend the ACCA’s residual clause to comport with the Constitution and provide a greater prison sentence for a defendant with a prior conviction for possession of a short-barreled shotgun, as in Johnson, or, as here, a prior conviction for attempted burglary, those sentenced under the amended statute could not seek collateral review based on Johnson. Just as in Bousley, however, the prospect of amendment has no effect upon cases that come before us in the meantime.

. I note, however, that doing so would be quite an endeavor. The Court in Johnson acknowledged that statutes using terms like "substantial risk” and "unreasonable risk” are not by their very natures unconstitutional, but such laws pass muster in part because they are not linked "to a confusing list of examples” as was the ACCA's residual clause. Johnson, 135 S.Ct. at 2561. “More importantly,” the Court criticized the combination of the categorical approach, the use of which the Court reaffirmed, and the phrase "serious potential risk” as used in the residual clause. Id. This "abstract inquiry,” the Court said, “offers significantly less predictability” than one tied to actual conduct rather than to the abstract conditions the categorical approach requires. Id. The Supreme Court’s blueprint creates a daunting task for Congress. Would Congress keep the residual clause language 'but scrap some of the "confusing list of examples?” Id. Would it scrap the residual clause and swap it for a laundry list of enumerated offenses? Or would it write into the law a requirement that the defendant’s actual conduct is what matters, forcing courts to abandon the categorical approach? And would such a law even then pass constitutional muster?

. I do not quibble with the majority’s citation to the Sixth Circuit’s decision that the guidelines are not subject to void-for-vagueness challenges, but I think it is worth noting that the Sixth Circuit recently has applied Johnson’s vagueness rule to the career offender guideline in at least two unpublished opinions in direct review cases. See, e.g., United States v. Darden, 605 Fed.Appx. 545, 546 (6th Cir.2015) ("Darden deserves the same relief as Johnson: the vacating of his sentence. Indeed, after Johnson, the Supreme Court vacated the sentences of offenders who were sentenced under the Guidelines' residual clause.” (citing cases the Supreme Court vacated in light of Johnson)); United States v. Harbin, No. 14-3956, 2015 WL 4393889, at *1 (6th Cir. July 20, 2015).