MURPHY, Circuit Judge,
concurring in part and dissenting in part.
Paul Goodwin, who is scheduled to be executed on December 10, 2014, has filed a *905 motion for authorization to file a second or successive habeas application. He claims that the Missouri Supreme Court issued a decision that was contrary to Hall v. Florida, 184 S.Ct. 1986 (2014), when it declined to consider his adaptive functioning despite the fact that he presented evidence of an IQ score of 72. See Goodwin v. State, 191 S.W.3d 20, 30-31 (Mo. banc 2006). While acknowledging the IQ score of 72 to be within the five point margin of error for the Wechsler scale of subaverage intellectual functioning, the Missouri Supreme Court nonetheless characterized that score as “inadequate to raise a triable issue of fact.” Id.
The panel majority concludes that Hall is not retroactive to cases on collateral review and that Goodwin’s petition is barred as second or successive under 28 U.S.C. § 2244. I concur in the panel’s denial of Goodwin’s application for a certificate of appealability. I dissent from the panel’s denial of the authorization to file a second or successive habeas application because Goodwin has made “a prima facie showing that the application satisfies the requirements” of § 2244, namely that his second or successive habeas petition relies “on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” Id. at § 2244(b)(2)(A).
In her controlling concurring opinion in Tyler v. Cain Justice O’Connor reasoned that the Court can make “a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule.” 533 U.S. 656, 669, 121 S.Ct. 2478 (2001). And in Penry v. Lynaugh the Court expressly stated that “if [it] held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons ... regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review.” 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on other grounds by Atkins, 536 U.S. at 307, 122 S.Ct. 2242.
The Supreme Court held in Atkins v. Virginia, that the Eighth Amendment prohibits a state from taking the life of a mentally retarded offender. 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). The Court noted that “an IQ between 70 and 75 or lower” is “typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition.” Id. at 309 n. 5, 122 S.Ct. 2242.
Then in Hall, the Court held unconstitutional a Florida law that, as interpreted by that state’s supreme court, required a defendant to show an IQ score of 70 or lower before presenting additional evidence of intellectual disability. 134 S.Ct. at 1992. The Court held that “when a defendant’s IQ test score falls within the test’s acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits.” Id.
The new rule the Supreme Court announced in Hall is substantive in nature and therefore applies retroactively. Under Atkins, defendants with IQ scores above 70 in Florida were not protected from capital punishment because they were not intellectually disabled. Now, under Hall, defendants with IQ scores above 70 in Florida may be considered intellectually disabled under Atkins. See Hall, 134 S.Ct. at 1990. By invalidating Florida’s definition of the mentally retarded, the Supreme Court in Hall altered the “class of persons that the law punishes.” Schriro v. Summerlin, 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). It thus announced a substantive rule that applies *906 retroactively. See id. For similar reasons, Goodwin now presents a new claim that was not raised in his previous habeas application.
In reaching the opposite conclusion, the majority relies upon the Eleventh Circuit’s decision in In re Henry, 757 F.3d 1151, 1163-64 (11th Cir.2014). As the dissent in Henry pointed out, the panel majority came to this hasty conclusion a mere three weeks after Hall was decided, and as is the case here, under the time pressure of an “imminent execution” rather than in the normal course with a benefit of full briefing. Id. at 1163-64.
Goodwin has made a prima facie showing that the Missouri Supreme Court’s refusal to consider' his adaptive functioning was contrary to NaM. The evidentiary record before the Supreme Court in Hall showed the defendant had undergone seven admissible IQ evaluations, with one test score of 71, and a range of scores between 71 and 80. 134 S.Ct. at 1992. Here, Goodwin presented eight IQ evaluations taken before he reached the age of eighteen with one score of- 72 and a range between 72 and 84.
These numbers required Missouri courts to consider evidence of Goodwin’s adaptive functioning in order to determine whether he is within the class of people about whom there is a national consensus forbidding their execution, as the Supreme Court required of the Florida courts in Hall. 134 S.Ct. at 1998, 2001. This is especially true given the Court’s instruction that “[cjourts must recognize, as does the medical community, that the IQ test is imprecise,” and caution that “[a] State that ignores the inherent imprecision of these tests risks executing a person who suffers from intellectual disability.” Id. at 2001.
In my view the prudent course would be to recognize the retroactivity of Hall and the viability of Goodwin’s claim that his rights under that decision have been denied. I would therefore grant Goodwin authorization to file his habeas application, grant the related application for stay of execution, and permit Goodwin an opportunity to litigate his claim.