# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 19-10979

_____

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2019

Lyle W. Cayce
Clerk

In re:  MARK ANTHONY SOLIZ,

>    Movant

_____

Motion for an Order Authorizing
the United States District Court for the
Northern District of Texas to Consider
a Successive 28 U.S.C. § 2254 Application
and Motion to Stay Execution

_____

Before DENNIS, SOUTHWICK and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Mark Anthony Soliz, a Texas inmate whose scheduled execution looms, filed two motions, one for authorization to file a successive application for a writ of habeas corpus and the other to stay execution.  We conclude that 28 U.S.C. § 2244(b) bars his successive application and DENY both motions.

## FACTUAL AND PROCEDURAL BACKGROUND

Soliz was convicted in March 2012 of the murder of Nancy Weatherly in the course of committing or attempting to commit burglary or robbery, and he was sentenced to death.  This court detailed the offense in *Soliz v. Davis*, 750 F. App'x 282 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1447 (2019).  The Texas

No. 19-10979

Court of Criminal Appeals affirmed Soliz's conviction and sentence on direct appeal. *Soliz v. State*, 432 S.W.3d 895 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1154 (2015).

The Office of Capital Writs was appointed as Soliz's state habeas counsel. Soliz filed his initial state application for writ of habeas corpus on May 6, 2014, while his direct appeal was pending. His state habeas claims were denied. *Ex parte Soliz*, No. WR-82,429-01, 2014 WL 12713257 (Tex. Crim. App. Dec. 17, 2014). That application did not make a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), but it did argue that the reasoning of *Atkins* should be extended to create a categorical exemption from death sentences for individuals with Fetal Alcohol Spectrum Disorder ("FASD"). The argument was that FASD is equivalent to the intellectual disability which *Atkins* discusses. This opinion refers to this claim as an *Atkins*/FASD claim.

Seth Kretzer and Carlo D'Angelo were appointed as Soliz's federal habeas counsel. Soliz filed his initial federal application on December 11, 2015. On September 6, 2017, the district court denied all claims but granted a certificate of appealability ("COA") as to the *Atkins*/FASD claim. *Soliz v. Davis*, No. 3:14-CV-4556-K, 2017 WL 3888817 (N.D. Tex. Sept. 6, 2017). We affirmed the district court. *Soliz*, 750 F. App'x 282. The Supreme Court denied his petition for a writ of certiorari. *Soliz*, 139 S. Ct. 1447.

Kretzer and D'Angelo continued to represent Soliz in state and federal successive habeas proceedings. Soliz returned to state court on August 9, 2019 and filed a successive application, again asserting the *Atkins*/FASD claim, and a motion to stay the execution. On August 21, 2019, the Court of Criminal Appeals denied the application as an abuse of the writ, did not review the merits of the claim, and denied the motion. *Ex parte Soliz*, No. W R-82,429-02, 2019 WL 3958247 (Tex. Crim. App. Aug. 21, 2019).

No. 19-10979

On September 3, 2019, Soliz moved in this court under Section 2244 for an order authorizing the district court to consider a second or successive application for a writ of habeas corpus. For the fourth time, Soliz brings the same *Atkins*/FASD claim seeking to extend the rationale of *Atkins* to individuals with FASD. Texas responded the next day.

## DISCUSSION

We review a motion to authorize the filing of a successive habeas application to determine if it makes a *prima facie* showing of satisfying the requirements of 28 U.S.C. § 2244(b)(3)(C). A *prima facie* showing is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).

A person in custody under a state-court judgment who moves to file a successive application for a writ of habeas corpus in federal court must satisfy these requirements:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--

>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

>> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

>> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient

3

to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b).

Soliz argues that his current claim is not identical to his previous claims about his FASD because of changes in the medical understanding of intellectual disability.  Texas argues that Soliz previously presented this same claim about FASD and was rebuffed, and there is no new rule of constitutional law that would support some new claim he says he is making.

## I.    *Claim not presented in prior federal application*

Soliz must show that this claim was not presented in a prior federal application, or else it will be dismissed.  28 U.S.C. § 2244(b)(1).  "If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases."  *Tyler v. Cain*, 533 U.S. 656, 661 (2001).  Soliz acknowledges that "this claim was previously raised," but he argues the current claim is sufficiently new because the standard "for assessing whether one meets the *Atkins* threshold for intellectual function has been modified" by the Diagnostic and Statistics Manual-Fifth Edition ("DSM-5").  Soliz contends that this Court accepted that reasoning in a recent decision. *See In re Johnson*, -- F.3d – , 2019 WL 3814384 (5th Cir. 2019).  Something of the same point, he also argues that *Atkins* "is a constantly evolving doctrine that merits further consideration by this Court."  For support, Soliz says he is presenting the same issue that recently led this court to grant a motion to file a successive application in *Johnson*.  We examine that precedent.

Johnson had not previously raised an *Atkins* claim because trying to show intellectual disability would have been futile under previous methods of diagnosis.  In his motion for authorization to file a successive application,

Johnson presented undisputed evidence that "new diagnostic guidelines included significant changes in the diagnosis of intellectual disability, which changed the focus from specific IQ scores to clinical judgment." *Id.* at *5. As we quoted in that opinion, the Supreme Court stated that "[r]eflecting improved understanding over time, . . . current manuals offer 'the best available description of how mental disorders are expressed and can be recognized by trained clinicians.'" *Id.* at *5 n.2 (quoting *Moore v. Texas*, 137 S. Ct. 1039, 1053 (2017)) (ellipsis in original).

We held that Johnson had to show two things. First was that he had not previously made this claim and had it rejected; if that had occurred, Section 2244(b)(1) would be a bar. The State conceded Johnson had not previously made an *Atkins* claim. *Id.* at *5. Second, Johnson needed to convince us that *Atkins* was a new rule of constitutional law made retroactive by the Supreme Court. *Id.* There was no doubt that *Atkins* satisfies that requirement generally, but because *Atkins* preceded Johnson's earlier applications for habeas relief, he needed to show that the case was retroactive for some reason as to him. *Id.* We will discuss that requirement next.

Soliz does make the argument that his current claim should be viewed as different from his earlier one. That argument is better understood in our next section when we discuss whether recent precedents make this claim available to him for the first time.

II.    *New rule of constitutional law that was previously unavailable*

We held in *Johnson* that *Atkins* had previously been unavailable because under earlier medical understandings of intellectual disability relevant to Johnson's condition, an *Atkins* claim would have been futile. *Id.* at *6. Recent changes in the methodology for assessing intellectual disability removed a

clear barrier to the claim, arguably making *Atkins* available to him for the first time. *Id.* (discussing *In re Cathey*, 857 F.3d 221 (5th Cir. 2017)). We repeat that Johnson also overcame the bar we have held Soliz has not, that Johnson must not have previously brought the same claim. *Id.* at *5.

In the present case, Soliz embraces *Johnson* and *Cathey*. Nonetheless, all he has done is recharacterized a claim that he has long been making. His claim still is that "those afflicted with FASD should be categorically ineligible for the death penalty just as the intellectually disabled are." In order to show the applicability of at least this part of the *Cathey* and Johnson analysis, he needed to show a meaningful change in the manner in which the medical field diagnoses FASD and that his disorder is now medically equated to intellectual disability as defined in *Atkins*.

We conclude that Soliz's latest filing does not present a new claim of a retroactive constitutional right recognized by the Supreme Court that was previously unavailable to him.

To the extent Soliz argues that he has now raised an actual *Atkins* claim for the first time, it would nevertheless be barred. Soliz again relies on this court's recent decision in *Johnson* to argue that his claim was not previously available. Soliz argues that the modified professional standards for determining intellectual disability and his recently-scored IQ of 75 constitutionally require a finding that he is functionally equivalent to the *Atkins* standard.

In evaluating this argument, we return to *Johnson*. We see that the *Atkins* claim there was previously unavailable because the DSM-5 was published in May 2013, just 17 days before the district court denied his application, which made an amendment to the application infeasible. *Johnson*, 2019 WL 3814384, at *5. In contrast, Soliz filed his amended application in

February 2016, years after the DSM-5 was published. *Soliz*, 2017 WL 3888817, at * 1. Furthermore, *Cathey*, which the Court relied on in *Johnson*, was issued four months before the district court denied Soliz's initial application. *Compare id.* (issuing date of September 6, 2017), *with Cathey*, 857 F.3d 221 (issuing date of May 11, 2017). Thus, any claim similar to what we discussed in *Johnson* and earlier in *Cathey* was available to Soliz at the time of his earlier application for a writ of habeas corpus.

\* \* \*

Texas addresses other requirements for filing a successive application and argues Soliz falls short in various ways. We need not discuss any of those, for at most they would be additional reasons for our denial of relief.

Soliz's motion that requests authority to file a successive application in district court is DENIED. The motion for a stay of execution is also DENIED.